UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLEARPRACTICE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11CV725 JCH |
| ) | |
| NIMBLE, LLC, NIMBLE SOFTWARE ) | |
| SYSTEMS, LLC, and NIMBLE SOFTWARE, ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon Nimble Software, LLC's Motion to Dismiss or Transfer (ECF No. 20). This matter is fully briefed and ready for disposition.

## BACKGROUND

Defendant Nimble Software, LLC ("Nimble") is a Delaware limited liability company with its principal place of business in Santa Monica, California. (Nimble Software, LLC's Memorandum in Support of its Motion to Dismiss or Transfer ("Memorandum"), ECF No. 21, p. 1; Complaint for Declaratory Judgment ("Complaint" or "Compl."), ECF No. 1, ¶3). Nimble develops customer relationship management software for different industries, including the healthcare industry. (Memorandum, p. 2).

Plaintiff is a Delaware corporation with its principal place of business in Maryland Heights, Missouri. (Compl., ¶1). Plaintiff uses the mark NIMBLE in connection with its software for use in the healthcare industry. (Id., ¶9). Plaintiff has two pending U.S. trademark applications for the mark NIMBLE. (Id.).

On April 11, 2011, Nimble's counsel sent a cease and desist letter to Plaintiff regarding Plaintiff's use of and application to register the NIMBLE mark and claims that Plaintiff's application

for and use of the NIMBLE mark constitutes "trademark infringement." (Compl., ¶¶10, 11). On April 22, 2011, Plaintiff filed a declaratory judgment action in this Court seeking an order the Plaintiff's use of the NIMBLE mark does not constitute trademark infringement. On July 15, 2011, Nimble filed a motion to dismiss this case based upon lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2).

## **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**A.    STANDARD**

To determine whether the Court has personal jurisdiction, the Court first looks at whether Missouri's long-arm statute confers jurisdiction. Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002)(citing Sales Serv., Inc. v. Daewoo Int'l (America) Corp., 719 F.2d 971, 972 (8th Cir. 1983)). If so, then the Court determines whether the exercise of personal jurisdiction would violate the due process clause of the Constitution. Porter, 293 F.3d at 1075 (citing Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 225 (8th Cir. 1987)). Because Missouri's long-arm statute allows for jurisdiction over nonresident defendants to the extent allowable under the due process clause, the court looks "to the question whether the assertion of personal jurisdiction would violate the due process clause." Porter, 293 F.3d at 1075 (citing FDIC v. Malmo, 939 F.2d 535, 537 (8th Cir. 1991)).

To assert personal jurisdiction over a nonresident defendant, due process requires "minimum contacts" with the forum State such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)(citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. at 297. Generally, jurisdiction may be exercised over a non-consenting defendant outside the boundaries of the forum based upon the following factors: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the

relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. Burlington Indus. v. Maples Indus., 97 F.3d 1100, 1102 (8th Cir. 1996); Land-O-Nod Co. v. Bassett Furniture Indus., 708 F.2d 1338, 1340 (8th Cir. 1983).

To defeat a motion to dismiss for lack of personal jurisdiction, a nonmoving party must make a prima facie showing of jurisdiction and "may do so by affidavits, exhibits, or other evidence." Romak USA, Inc. v. Rich, 384 F.3d 979, 983-84 (8th Cir. 2004)(citing Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003)). The party seeking to establish the court's *in personam* jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Id. Nevertheless, if the district court does not hold a hearing and instead relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party. Dakota Indus. v. Dakota Sportswear, 946 F.2d 1384, 1387 (8th Cir. 1991) (internal citation omitted).

**B.     DISCUSSION**

Nimble argues that it does not have the requisite contacts with Missouri for personal jurisdiction to be proper. Both parties agree that Nimble does not have any direct, physical contact with Missouri. That is, Nimble does not have an office, facilities or employees in Missouri. (Memorandum, p. 2). Rather, both parties focus the thrust of their arguments on Nimble's website, Nimble's "partnership" with a Missouri company, Aviva, LLC ("Aviva"), and the demand letter sent by Nimble's counsel to Plaintiff in Missouri. See Clearpractice's Memorandum in Opposition to Nimble Software, LLC's Motion to Dismiss or to Transfer ("Response"), ECF No. 27, p. 8 (Nimble "must have reasonably anticipated being haled into court in Missouri based on its interactive website, its agent/distributor in Missouri and its demand letter.").

1.     Defendant's Website/Partnership with Aviva

Plaintiff alleges that this Court has personal jurisdiction over Nimble because it transacts business in the State of Missouri and in this district through its website. (Compl., ¶6). Plaintiff notes that Nimble's website, www.nimble.com, "allows Missouri residents to register for NIMBLE software." (Id.). Nimble's website also invites viewers to "join our beta now" and gives them the opportunity to become Nimble's "Solution Partners." (Response, p. 4).[1] The "Solution Partner" program is described on the website as promoters of Nimble's products:

> Join the Nimble family and become part of this great opportunity in delivering the next generation of Social Relationship Management to small businesses. As trusted technology advisors, you will play a pivotal role in helping your customers get the best out of Nimble. Nimble will provide you with all of the tools, technology, training, and support you need to make your business even more successful. The Nimble Solution Provider Program authorizes Consultants, Value Added Resellers, and Systems Integrators to sell and support the Nimble products. Nimble Solution Providers are supported by sales, marketing, and technical support services, and receive industry-leading product commissions.

www.nimble.com; Response, pp. 4-5. In addition, Plaintiff alleges that Nimble's website identifies "an authorized agent and partner in this judicial district, Aviva LLC, which is based in Wildwood, Missouri, that sells and supports Nimble products." (Compl., ¶6).

Nimble, in turn, claims that its website merely provides information about the company and its products, and does not allow purchases of its product from the website. (Memorandum, pp. 2, 8). Further, Nimble claims that Aviva is not a "partner" in a traditional sense. (Memorandum, p. 2). Rather, Aviva, as a "Solution Partner," simply expressed future interest in Nimble's products and filled out an online form. (Memorandum, pp. 2, 7). Aviva and Nimble do not have any agreements and Aviva is not authorized to sell Nimble's products. (Memorandum, p. 2). Nimble has not made any

---

[1] Plaintiff repeatedly refers to Nimble's imploration to "join our beta now", but neither Plaintiff nor Nimble explain what is meant by this phrase. According to webster.com, "beta" can refer to (1) the 2d letter of the Greek alphabet, (2) a beta particle, (3) a measure of the risk potential of a stock or an investment portfolio expressed as a ratio of the stock's or portfolio's volatility to the volatility of the market as a whole, or (4) a nearly complete prototype of a product (as software). The Court assumes that Nimble's website refers to the ultimate meaning.

sales in Missouri. (Memorandum, p. 6). Likewise, Aviva has not transacted any business with, or for, Nimble in Missouri. (Id.).

2. Specific Jurisdiction[2]

"[S]pecific jurisdiction arises when the defendant has purposely directed its activities at the forum state, and the cause of action relates to those activities[.]" Norrise v. Union Pac. R.R., No. 4:07CV02095, 2008 U.S. Dist. LEXIS 56412, at *10 (E.D. Mo. 2008) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n. 8 (1984)). In other words, specific jurisdiction refers to jurisdiction over causes of action that "arise out of" or "relate to" a defendant's activities within a state. Lakin v. Prudential Sec., 348 F.3d 704, 707 (8th Cir. 2003)(citations omitted).

The Eighth Circuit has utilized the test from Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) to determine if internet activity provides a basis for specific jurisdiction. See Lakin, 348 F.3d at 710-11. The Zippo court adopted a "sliding scale" analysis of using websites to determine jurisdictional contacts:

> [O]ur review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.... At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction.... The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise

---

[2]Plaintiff has not argued in its papers that general jurisdiction exists. See Response, p. 6, n. 4. Although Plaintiff has "reserved its right to assert general jurisdiction," the Court does not believe that additional discovery or argument regarding general jurisdiction would be worthwhile given the extremely limited contacts that Nimble has with the forum.

- 5 -

of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Zippo Mfg. Co., 952 F. Supp. at 1124 (internal citations omitted); see also Bell v. Imperial Palace Hotel/Casino, Inc., 200 F. Supp. 2d 1082, 1087 (E.D. Mo. 2001); People Solutions, Inc. v. People Solutions, Inc., No. 3:99-CV-2339-L, 2000 U.S. Dist. LEXIS 10444, at *9-10 (N.D. Tex. July 25, 2000). In sum, "the mere operation of a web site, without 'something more,' is clearly insufficient as a basis for exercising personal jurisdiction." Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc., 96 F. Supp. 2d 919, 923 (E.D. Mo. 2000).

Here, Nimble's website is part of the "middle ground" of interactive websites. The user can fill out a form and register through the website to become a "Solution Partner" and is invited to "join our beta now." The viewer can exchange information with Nimble, but cannot make purchases, share files or perform business with Nimble. Thus, the Court must consider the level of interactivity and commercial nature of the exchange of information that occurs on Nimble's website to determine whether it is sufficient for this Court to exercise jurisdiction.

The Court finds that the minimal level of interactivity and the limited nature of the exchange of information does not support exercise of personal jurisdiction. Nimble's contacts with Missouri are limited to its relatively passive website that does not provide any method for purchasing its product. At the time the Complaint was filed, Nimble's website was informational and only partially interactive in that it allowed viewers to register for future correspondence. (Nimble Software, LLC's Reply Memorandum to ClearPractice's Opposition to the Motion to Dismiss or Transfer ("Reply"), ECF No. 34, p. 3). Nimble has sold no products or contracted for services with anyone in Missouri through the website or as a result of any Missourian's interaction with the website.

Although Plaintiff cites to Nimble's contact and relationship with Aviva as a basis for jurisdiction, this relationship likewise does not confer jurisdiction on this Court. Aviva's limited

contact with Nimble consists solely of filling out an online form to become a "Solution Partner". The designation of a "Solution Partner" is a marketing strategy to help develop interest in Nimble's products; the parties are not bound any contractual restraints or obligations. (Reply, p. 4). "Solution Partners" merely have expressed an interest in establishing a future business relationship. (Id.). Such a limited exchange of information on an online form and the brief and inconsequential contact between Nimble and Aviva is not sufficient to support a finding of personal jurisdiction. The conditional prospect of a future contractual relationship between Aviva and Nimble is not sufficient to establish jurisdiction.[3] A defendant, such as Nimble, would not anticipate being haled into court in Missouri without more than a website viewable in Missouri and evidence that one "partner" has filled out an online form. See Renaissance Pen Co. v. Krone, L.L.C., No. 4:04 CV 557, 2006 U.S. Dist. LEXIS 21794, at *13-14 (E.D. Mo. Apr. 11, 2006) (no personal jurisdiction where the website was not a "virtual store" and there was no evidence that any Missouri residents purchased products from the website); ITI Holdings, Inc. v. Prof'l Scuba Ass'n, No. 05-184-P-S, 2006 U.S. Dist. LEXIS 3747, at *13 (D. Me. Jan. 31, 2006) ("The mere existence of an interactive web site and one contact with a [forum state] resident through that website is not sufficient to establish either general or specific personal jurisdiction."); Uncle Sam's Safari Outfitters, Inc., 96 F. Supp. 2d at 924 (no personal jurisdiction where the defendants "did nothing more than set up an interactive web site" and no evidence existed that anyone from Missouri accessed the web site, let alone attempted to purchase anything); S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.,79 F. Supp. 2d 537, 541 (E.D. Pa. 1999) ("The presence of an e-mail link or a form for placing orders on a web site does not create the kind of minimum contacts required to establish personal jurisdiction."); People Solutions, Inc., 2000 U.S. Dist. LEXIS 10444, at *10-11 (finding no personal jurisdiction where defendant's website had "the

---

[3]In fact, Aviva declined to enter into a business relationship with Nimble at this juncture. (Reply, p. 5).

potential to interact with, sell products to, and contract with Texas residents on its web site, [but] the evidence does not support a finding that this level of activity has taken place" ).

Moreover, applying the Burlington Indus. factors, the nature and quality of Nimble's contact with Missouri is inadequate to support a finding of specific jurisdiction. No Missouri residents ordered any products from Nimble or Aviva, and Nimble's and Aviva's websites do provide a method for purchasing Nimble products. Aviva does not have any contractual obligations to Nimble, nor has it sold any of its products. (Reply, p. 4). See Mink v. AAAA Dev. LLC, 190 F.3d 333, 337 (5th Cir. Tex. 1999) (AAAA's website was insufficient to subject it to personal jurisdiction where "[t]here was no evidence that AAAA conducted business over the Internet by engaging in business transactions with forum residents or by entering into contracts over the Internet"). Plaintiff claims that Nimble's website "specifically targeted" Missouri. (Response, p. 7). Plaintiff then describes how users can select "Missouri" from the pull down options that include every state. Based upon this one website feature, the Court does not find that Nimble's website targets Missouri. Rather, the Court finds that, if anything, Nimble targeted every state. See Reply, p. 4 (noting there is nothing peculiar about Missouri that would warrant Nimble specifically targeting Missouri).

In addition, Plaintiff argues that Nimble has "partnered with a Missouri company, Aviva LLC, to 'sell and support the Nimble products' in Missouri." (Response, p. 8). Although Plaintiff frames this relationship as an agency relationship or that of a seller and distributor, there is no evidence to support this characterization. (Response, p. 8). Conversely, the evidence before the Court is that there was no such partnership in the traditional sense. Aviva simply filled out a form on Nimble's website. The Court has no evidence of any promotions or other efforts made by Aviva to sell Nimble's products in Missouri. In fact, Nimble is not even referenced on Aviva's website. (Reply, pp. 4-6).

Likewise, it does not appear that the quantity of contacts with Missouri supports specific jurisdiction. Plaintiff only points to an online form filled out by Aviva and a cease and desist letter.

These random and sporadic contacts are insufficient. The Court does not believe that Nimble reasonably could anticipate being brought into court based upon such extremely limited and inconsequential contacts.

With respect to the relationship of Plaintiff's cause of action the to the contacts, the Court does not find this supports jurisdiction in Missouri. Plaintiff's lawsuit alleges a claim for declaratory judgment for non-infringement of Nimble's trademark. Plaintiff's lawsuit is not based upon any allegation of likelihood of confusion with a product sold through Nimble's website or sold by Aviva. Thus, there is no evidence that anyone from Missouri, other than Aviva, had accessed the website; there is no evidence that anyone from Missouri confused Nimble's mark with Plaintiff's mark. Therefore, no evidence of any website contacts or contacts with Aviva relates to this cause of action.

In sum, the Court finds that exercising jurisdiction in this case based upon Nimble's website and relationship with Aviva would be inconsistent with due process. See 1st Tech., LLC, No. 4:08 CV 586, 2009 U.S. Dist. LEXIS 27786, at *10-11(E.D. Mo. Mar. 30, 2009)(court found the website was insufficient to support personal jurisdiction over the defendant where the website was semi-interactive and allowed users to leave their contact information and request further information, but did not permit users to download software or conduct business). Based upon the foregoing, the Court finds that it does not have specific jurisdiction over Nimble, and Plaintiff's Complaint is dismissed.

3. Cease and Desist Letter

Plaintiff claims that Nimble's cease and desist letter also provides a basis for conferring jurisdiction. Plaintiff asserts that the cease and desist letter put a "cloud" over its trademark and "hindered ClearPractice's ability to further its business goals in Missouri and throughout the United States." (Response, p. 2). Plaintiff, however, has not come forward with any evidence that the cease and desist letter put a cloud over its trademark or had any adverse effect on its business; Plaintiff has

not identified any facts or witnesses to support this claim. (Reply, p. 9). Therefore, the April 11, 2011 cease and desist letter does not affect this Court's determination that it does not have personal jurisdiction over Nimble. See Bib Mfg. Co. v. Dover Mfg. Co., 804 F. Supp. 1129, 1133 (E.D. Mo. 1992)("cease-and-desist letters ... standing on their own will not suffice to confer this Court with personal jurisdiction").

Accordingly,

**IT IS HEREBY ORDERED** that Nimble Software, LLC's Motion to Dismiss or Transfer (ECF No. 20) is **GRANTED**. An appropriate order of dismissal is filed simultaneously herewith.


Dated this __7th__ day of October, 2011.

    /s/Jean C. Hamilton
    UNITED STATES DISTRICT JUDGE